U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED
NOV 20 2006
ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| KEITH MARK DILLON | DOCKET NO. 06-CV-1258 |
| VERSUS | JUDGE TRIMBLE |
| BRIAN RODGERS, ET AL | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

Before the court is the pro se civil rights complaint (42 U.S.C. § 1983) of Plaintiff Keith Mark Dillon, filed on July 24, 2006. At the time of filing suit, Dillon was incarcerated at the Jefferson Parish Jail in Gretna, Louisiana; however the acts complained of allegedly occurred at a facility in Jena, Louisiana, where Plaintiff was housed in the aftermath of Hurricane Katrina.[1]

Dillon amended his complaint on September 5, 2006. [Doc. #3] Plaintiff alleges that he was subjected to excessive force and cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. He names as defendants: Warden T.W. Thompson, Major Brian Rodgers, Lt. Hollifield, Sgt. Edwards, Sgt. Pietsch, and Sgt. Walker, all of the Louisiana Department of Corrections ("L-DOC"); Officers Hartzoglou, Caspers (or Capers), Bullock, Miller, and Mazzo and Captain Ramos, all of the New York Department of Corrections ("NY-DOC"); Sgt. Tim White and Sgt. Shane White; and the LaSalle Parish Sheriff's Department.

This matter was been referred to the undersigned for review, report, and recommendation pursuant to 28 U.S.C. § 626 and the standing orders of the court.

---

[1] Dillon is no longer incarcerated; he was released from jail on October 20, 2006. [Doc. #9]

## STATEMENT OF THE CASE

On or about August 28, 2005, Plaintiff was a pre-trial detainee being held on DWI charges at the Jefferson Parish Prison ("JPP"). Plaintiff alleges that, in the aftermath of Hurricane Katrina, he, along with other JPP inmates, was cuffed behind his back with plastic handcuffs that were so tight, his wrists bled. Plaintiff was placed on a bus with other inmates, and their legs were shackled.

The plaintiff and other inmates were transported to a facility in Jena, Louisiana. Upon arrival, Plaintiff alleges that he was hit in his back and forced onto the floor. He had to lie face down on the floor with his hands behind his back for six hours, along with other inmates. During this period of time, the officers at the prison began shaving all of the inmates heads. According to Dillon, the prison guards were initially only from the Louisiana Department of Corrections; after approximately one week, though, officers from New York's Department of Corrections arrived.

Plaintiff and the other inmates were forced to remove all of their clothes and make a single file line, completely nude, with each man's toes touching the heels of the man in front of him. The plaintiff and other inmates were ordered to clasp their hands behind their heads while lined up naked, and each put his elbows forward, touching the shoulders of the man in front of him.

Plaintiff claims that, after Hurricane Rita, the city was under a "boil water" advisory, but the prison officials did not boil the water Plaintiff and other inmates had to drink.

Plaintiff also alleges that, on September 27, 2005, he was arguing with another inmate, Jesse Gilmore, after standing in the "chow" line for over thirty minutes. Sgt. Walker witnessed Plaintiff push Gilmore. Walker yelled, and Plaintiff let go of Gilmore. Walker walked over, grabbed and held Plaintiff while Sgt. Edwards punched Plaintiff in the side of the head. Plaintiff was dragged to the back of the hallway and was slammed to the floor and cuffed behind his back. Sgt. Pietsch

2

kicked Plaintiff twice in the back. Then Edwards hit Plaintiff again, dragged him some more, and slammed him to the floor again. Pietsch then kicked Plaintiff, causing Plaintiff's head to hit the wall. Plaintiff was told to face the wall and then repeatedly hit by Pietsch and Edwards in the sides of his head. Plaintiff alleges that Pietsch kicked him and hit him in the side of the head between twelve and fifteen times.

After the beating, Sgt. Walker and Sgt. Edwards picked Plaintiff up and turned him around so that he was facing them. Edwards then punched Plaintiff in the right shoulder. After seeing that it hurt Plaintiff, Edwards punched him again in the same spot. [Doc. #1-1, p.12] Plaintiff was then dragged past the dorms and taken to "lock down" where he was told by Lt. Hollifield to turn and face the wall on his knees. Hollifield then hit Plaintiff in the head. Major Rodgers entered the room and questioned Plaintiff about what had happened between Plaintiff and Inmate Gilmore. While questioning Plaintiff, Rodgers hit him repeatedly on the sides of Plaintiff's head. Hollifield told Rodgers that Rodgers should have hit Plaintiff more, and then Hollifield took it upon himself to continue the beating, hitting the plaintiff in the sides of the head. Plaintiff was then stripped of his clothing and placed in a cell where he passed out.

Plaintiff alleges that he was later awakened by a nurse who was accompanied by Lt. Hollifield. The nurse asked to see Plaintiff's hands; she was looking for signs that Plaintiff had been fighting. However, there were no cuts on Plaintiff's hands. The nurse then asked Plaintiff how he got so beat up. Because Hollifield was standing there, Plaintiff was afraid to say what really happened. He told the nurse that he simply could not say now he was injured. The nurse ordered ice packs, which Plaintiff placed on either side of his head over his ears. Plaintiff discovered that he was bleeding near his left ear. [Doc. #1-1 p.14] Later on that day, Plaintiff was moved back to

his dorm. The next day, the nurse went to check on Plaintiff and he informed her that he could not hear out of one ear.

Rachel Jones of the Louisiana Capital Assistance Center showed up at the facility, and Plaintiff reported what had happened to him and showed her his wounds. After Ms. Jones left, however, the abuse continued. Plaintiff claims that he was hit by Hartzoglou and a female officer from New York named Capers or Caspers. Some officers named Green, Hall, and Kelly were not violent and expressed to Plaintiff that they did not agree with what was going on.

On September 29, 2005, Sgt. Edwards saw that Plaintiff was back in the regular dorm, and Edwards began threatening to have Sgt. White and Sgt. Pietsch beat Plaintiff again.

On October 4, 2005, representatives from the NAACP and Human Rights Watch arrived at the facility. Plaintiff showed them his cuts and bruises. Two days later, on October 6, 2005, Plaintiff was called to leave the Jena facility.

After leaving the facility, Plaintiff was transported to Allen Correctional. He was examined by the medical staff there and x-rays were ordered of Plaintiff's neck, shoulder, and knees. Plaintiff was administered pain medication. Dillon was also treated by a psychiatrist from October 2005 through March 2006. Because of the trauma he experienced in Jena, Plaintiff was prescribed Trazadone 300 mg, and he participated in counseling sessions.

Plaintiff alleges that he still suffers from pain in his back, knees, and shoulder, as well as frequent headaches. Plaintiff alleges that he also suffered broken teeth from the beatings, as well as hearing loss in one ear.

## LAW AND ANALYSIS

1.  **Frivolity Review**

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and dismiss it without service of process if it is frivolous,[2] malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C.1915A; 28 U.S.C.1915(e)(2); Ali v. Higgs, 892 F.2d 438, 440 (5th Cir.1990). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C.1997e(c)(1).

District courts must construe *in forma pauperis* complaints liberally, but are given broad discretion in determining when such complaints are frivolous. See Macias v. Raul A. (Unknown) Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). A civil rights plaintiff must support his claim(s) with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. See Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." Macias at 97.

Plaintiff has submitted a well-pleaded complaint that specifically details his theories of liability with respect to each named defendant. Accepting all of the plaintiff's allegations as true, the Court concludes that his complaint should only be DISMISSED, IN PART, as to certain

---

[2] A claim is frivolous if it lacks an arguable basis in law or in fact. See Booker v. Koonce, 2 F.3d 114, 115 (5th Cir. 1993); Denton v. Hernandez, 504 U.S. 25 (1992).

defendants. Service will be ordered on the remaining defendants, as indicated in the **Memorandum Order.**

2.   **Excessive Force & Cruel and Unusual Punishment**

It appears from the record that immediately prior to Hurricane Katrina, Plaintiff was being held in the Jefferson Parish Prison on charges for which he had not yet been convicted; that is, Plaintiff was a pretrial detainee. Challenges to the constitutionality of conditions of pre-trial confinement are evaluated under the Fourteenth Amendment Due Process Clause. See Bell v. Wolfish, 441 U.S. 520, (1979). Under the Due Process Clause, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Hubbard v. Taylor, 399 F.3d 150, 158 (3rd Cir. 2005) (citing Bell, 441 U.S. at 535). To decide whether a pretrial detainee's constitutional rights have been violated, the court must determine whether the "disability is imposed for punishment or . . . [for] some other legitimate governmental purpose." Bell, 441 U.S. at 539. If a particular condition or restriction of pre-trial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Id.

A.   **LaSalle Parish Sheriff's Office**

In his original complaint, the plaintiff named as a defendant the LaSalle Parish Sheriff's Office. However, in Plaintiff's amended complaint, filed in response to the Court's memorandum order, Plaintiff noted, "Since the plaintiff cannot name any LaSalle Parish officers his claim against said party is hereby dismissed." Because Plaintiff has not raised any allegations of wrongdoing against any specific officer from the LaSalle Parish Sheriff's Department and seeks to voluntarily dismiss the department from his lawsuit, the undersigned recommends that Plaintiff's claims against that defendant be DISMISSED.

## B. Louisiana Department of Corrections Officers

Plaintiff has alleged that Major Brian Rodgers from Wade Correctional/LDOC hit Plaintiff in the head over ten times, causing hearing loss as well as pain in the area where Plaintiff had previously undergone a cervical fusion. Dillon also claims that emotional and mental abuse by Rodgers caused him to seek psychiatric treatment in the form of medication and counseling. Likewise, Plaintiff alleges that Sgts. Pietoch, Edwards, Walker and Lt. Hollifield all hit Plaintiff causing shoulder, head, back and knee pain as well as psychological trauma. Finally, Plaintiff claims that Warden T.W. Thompson took part in and condoned violence inflicted on Plaintiff and other inmates.

In Valencia v. Wiggins, 981 F.2d 1440 (5th Cir.), *cert. denied*, 509 U.S. 905 (1993), the court was confronted with a an excessive force claim brought by a pretrial detainee who had been confined for three weeks. That detainee was involved in a small-scale disturbance, and alleged that a guard used excessive force on him. The Valencia court, in a thorough and well-reasoned opinion, concluded:

> [W]hen a court is called upon to examine the amount of force used on a pretrial detainee for the purpose of institutional security, the appropriate analysis is that announced in Whitley[3] and Hudson: whether the measure taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."
> Valencia, 981 F.2d at 1446 (quoting Hudson v. McMillian, 503 U.S. 1 (1992)).

---

[3] See Whitley v. Albers, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986), providing that the Eighth Amendment is primary source of protection against the official use of force on <u>convicted</u> prisoners.

Whitley and Hudson are Eighth Amendment cases involving <u>convicted</u> prisoners; however, the <u>Valencia</u> court concluded that these cases provided the proper framework for analyzing a pretrial detainee's excessive force claim, when the force was apparently or allegedly applied in an effort to preserve institutional security: "[I]t is impractical to draw a line between convicted prisoners and pretrial detainees for the purpose of maintaining jail security." 981 F.2d at 1446.

It is clear from a review of the plaintiff's claims that the majority of the force arose in the context or pretext of restoring "institutional order" after Plaintiff argued with or pushed another inmate. Therefore, the plaintiff's claims should be analyzed under the Eighth Amendment's proscription of "cruel and unusual punishment."[4]

The Eighth Amendment proscribes only "punishments" that are "cruel and unusual." Accordingly, "[w]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992).

The relevant factors in this judicial inquiry as to whether unnecessary and wanton infliction of pain was used in violation of a prisoner's Eighth Amendment right to be free from cruel and unusual punishment include: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. <u>Hudson v. McMillian</u>, 962 F.2d 522, 523 (5th Cir.1992); <u>see also</u>, <u>Rankin v. Klevenhagen</u>,

---

[4] Indeed, the plaintiff contended that his constitutional right to be free from cruel and unusual punishment under the 14th Amendment and 8th Amendments was violated.

5 F.3d 103, 107 (5th Cir.1993); Valencia v. Wiggins, 981 F.2d 1440, 1446-47 (5th Cir.), *cert. denied*, 509 U.S. 905 (1993). These factors are not exclusive; each case must be judged on its own facts. Rankin, 5 F.3d at 107 n. 6.

The Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir.1997) (quoting Hudson, 503 U.S. at 7, 112 S. Ct. at 999). An Eighth Amendment violation does not occur with "every malevolent touch by a prison guard." Hudson, 503 U.S. at 9 In the instant matter, Plaintiff alleges that the injuries he suffered include back, neck, and knee pain, loss of hearing from blows to the head, exacerbation of a pre-existing cervical injury, and psychological injury requiring psychiatric treatment.

The next inquiries focus on whether the complained of force was applied in a "good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. In order to prevail, plaintiff must allege that the defendants acted with the requisite culpable state of mind; that is, they acted maliciously or sadistically for the very purpose of causing harm. Plaintiff's allegations imply that the incidents complained of began with Sgt. Walker's response to the the plaintiff's dispute with Gilmore.

The final factor examines whether any efforts were made to temper the severity of a forceful response. Plaintiff alleges that he and Gilmore had been waiting in line for "chow" for over thirty minutes and that Gilmore had left the line. At some point, Gilmore returned and attempted to resume his place toward the front of the line. Plaintiff and Gilmore exchanged words about whether Gilmore should have to go to the back of the line, and Plaintiff pushed Gilmore. However, Plaintiff

9

alleges that when he was told to stop, he complied, and no further disciplinary measures were needed. Plaintiff claims that being dragged down the hall, being repeatedly beaten by numerous officers, stripped, and threatened was much more severe than necessary. Plaintiff claims that the acts of the defendants were intentionally cruel and sadistic.

A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates. See, e.g., Williams v. Smith, 781 F.2d 319, 323 (2nd Cir. 1986). However, a supervisory official, like Warden T.W. Thompson, cannot be held liable pursuant to § 1983 under a theory of respondeat superior simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. See Alton v. Texas A&M University, 168 F.3d 196, 200 (5th Cir. 1999); see also Baskin v. Parker, 602 F.2d 1205, 1207-08 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345 (5th Cir. 1981); see also Watson v. Interstate Fire & Casualty Co., 611 F.2d 120 (5th Cir. 1980).

In the instant matter, Plaintiff has alleged that force was used maliciously for the very purpose to cause harm and not merely to restore discipline. See Hudson v. McMillian, 503 U.S. 1, 7-8 (1992); Rankin v. Klevenhagen, 5 F.3d 103, 106-107 (5th Cir.1993) (to state an excessive force claim under § 1983, a prisoner or pretrial detainee must show that force was not applied in a good faith effort to maintain or restore discipline but, rather, was administered maliciously and sadistically to cause harm). Plaintiff has stated a claim against the Louisiana Department of Corrections officials

that he named as defendants herein.

C. **New York Department of Corrections Officers**

Plaintiff has alleged that his civil rights were also violated by NY-DOC officers who came down to Louisiana to offer the L-DOC assistance after Hurricane Katrina. Plaintiff claims that Officers Hartzoglou and Caspers of the NY-DOC inflicted blows to his head as well as mental and verbal abuse and that NY-DOC officers Ramos, Bullock, Miller, and Mazzo inflicted mental and verbal abuse as well as threats of violence.

Mere allegations of verbal abuse or threats do not present actionable claims under § 1983. Bender v. Brumley, 1 F.3d 271, 274 (5th Cir. 1993), (citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.), *cert. denied*, 464 U.S. 998 (1983))(quoting Coyle v. Hughs, 436 F. Supp. 591, 593 (W.D. Okla. 1977)). Plaintiff has set forth allegations of verbal abuse and threats by NY-DOC officers Ramos, Bullock, Miller, and Mazzo. Plaintiff does not allege that any of those individuals laid a hand on him. Without more, threats and verbal abuse are insufficient to state a claim for which relief can be granted under § 1983. Therefore, the claims against Bullock, Miller, Mazzo and Ramos should be DISMISSED WITH PREJUDICE.

D. **Other Officers**

Finally, Plaintiff claims that Sergeant Tim White and Sergeant Shane White were mentally and verbally abusive and made threats of violence. As noted above, such threats and verbal abuse alone do not present actionable claims under § 1983. Therefore, the claims against these officers should be DISMISSED WITH PREJUDICE.

## CONCLUSION

For the forgoing reasons, **IT IS RECOMMENDED** that:

1. Plaintiff's claims against the **LASALLE PARISH SHERIFF'S OFFICE** be **DISMISSED WITHOUT PREJUDICE;**

2. Plaintiff's claims against **BULLOCK, MILLER, MAZZO,** and **RAMOS** be **DISMISSED WITH PREJUDICE;** and

3. Plaintiff's claims against **TIM WHITE** and **SHANE WHITE** be **DISMISSED WITH PREJUDICE**, all pursuant to 28 U.S.C. §1915A(b)(1).

**Furthermore,** as Plaintiff clarified in his amended complaint, he is <u>not</u> suing the Louisiana or New York Departments of Corrections; he is suing the individual officers employed by those departments. [Doc. #4-1, p.1] **Therefore, the docket sheet should be amended by removing the L-DOC and NY-DOC as defendants.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this 17th day of Nov., 2006.

James D. Kirk
**UNITED STATES MAGISTRATE JUDGE**

13